**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JESSE STOTTLEMYRE,**

**Plaintiff,**

**v.**

**SUNFLOWER ELECTRIC POWER CORPORATION,**

**Defendant,**

**v.**

**PIPING AND EQUIPMENT CO., INC.,**

**Third Party Defendant.**

**Case No. 12-2443**

**MEMORANDUM AND ORDER**

Plaintiff Jesse Stottlemyre brought this action against defendant Sunflower Electric Power Corporation ("Sunflower") alleging Sunflower's negligence resulted in plaintiff's injury at one of Sunflower's coal-fired power plants. Sunflower promptly filed a third-party complaint for indemnification against Piping and Equipment Co., Inc. ("P&E"), which was plaintiff's employer and the company contracted by Sunflower to complete maintenance work on Sunflower's power plant equipment. Sunflower and P&E each filed a motion for summary judgment (Docs. 97 & 99). Within a week, P&E filed an amended motion for summary judgment (Doc. 101) clarifying that it is also seeking summary judgment with respect to plaintiff's claims. The day after P&E's amendment, plaintiff filed a motion to strike affidavits, arguing that three paragraphs in two different affidavits offer inadmissible evidence and thus should not be considered at the summary judgment stage. (Doc. 102.) These are the four motions before the court.

## I. Factual Background

Sunflower contracted with P&E to perform maintenance at its power plant, Holcomb Station. Specifically, P&E was to change heavy solid baskets in a horizontal air pre-heater.[1] Plaintiff, a boilermaker, was employed by P&E and was responsible for changing out the baskets inside the horizontal air pre-heater. Air pre-heaters enclose three levels of baskets (the lowest level baskets are called "cold-end" baskets). These baskets increase the efficiency of the boilers and thus the efficiency of the power plant. Periodically, Sunflower shuts down all or part of a power plant for a limited period of time to perform maintenance on power plant systems, causing a power outage. Sunflower shut down its power plant for maintenance in 1997, 2003, 2006, and 2012. To minimize the length and effects of the power outage, Sunflower contracts with specialized companies to help perform such maintenance.

On January 19, 2012, plaintiff was removing a cold-end basket from the air pre-heater when another cold-end basket fell on him, causing injury. Plaintiff is receiving workers' compensation from his employer, P&E. Plaintiff's cause of action alleges Sunflower failed to inspect the brackets holding the baskets in the air pre-heater before plaintiff began work.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the record's evidence and reasonable inferences in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]here must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the

[1] The court will provide a technical explanation for the terminology used in this opinion only where relevant.

evidence that the plaintiff is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. Analysis

### A. Plaintiff's Motion to Strike Affidavits

Plaintiff filed a motion to strike affidavits (Doc. 102).[2] Importantly, plaintiff does not request the court to strike the affidavits as a whole; rather, plaintiff requests the court strike *paragraphs* seventeen, nineteen, and twenty of the affidavits of Steven Ricard and Ralph Marsh.[3] According to plaintiff, those paragraphs in Sunflower's affidavits do not comply with Federal Rule of Civil Procedure 56(e) because they are conclusory. Sunflower and P&E contend those paragraphs are sufficiently supported by the record.

Rule 56(c)(4) states the requirements for submitting an affidavit in support of a motion for summary judgment:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4). In reviewing a motion for summary judgment, it is well settled that a court can consider only admissible evidence. Fed R. Civ. P. 56(c)(2); *see Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009).

In paragraph seventeen of both affidavits, the declarants state: "The plaintiff was the statutory employee of P&E and Sunflower at the time of his injury on January 19, 2014, pursuant to the Act." (Docs. 98-1 at 2, 98-2 at 3.) Plaintiff is correct that the question of whether a worker is a statutory

---

[2] The two affidavits plaintiff seeks to strike were attached to Sunflower's motion for summary judgment.

[3] Mr. Ricard has worked at Holcomb Station since 1982 and was promoted in 2006 and 2012. Mr. Marsh has been an employee of Sunflower for twenty-eight years and was assigned as the Sunflower representative for the removal of cold-end baskets in the air pre-heaters for the January 2012 outage.

employee is a question of law for the court to decide. The testimony of Mr. Ricard and Mr. Marsh—non-lawyers—constitutes an inadmissible conclusion of law because neither is qualified to offer such testimony. Accordingly, the court will strike those paragraphs and ignore those statements when considering the motions for summary judgment. However, this does not mean the court cannot conclude Sunflower is plaintiff's statutory employer based on other facts or case law.

Next, paragraphs nineteen and twenty of both affidavits state:

> 19. The removal and replacement of the cold end baskets in the air pre-heaters are an ordinary part of Sunflower's regular maintenance and repair work of its generation facilities at the Holcomb Station.
> 20. The removal and replacement of the cold end baskets in the air pre-heaters are an integral part of Sunflower's regular operation of its electric generation facilities at the Holcomb Station.

(Docs. 98-1 at 2, 98-2 at 3–4.) For this objection, plaintiff relies on *Woods v. Cessna Air Craft Co.*, 553 P.2d 900, 906 (1976) ("These affidavits, while using the 'magic' words from *Hanna v. CRA, Inc.*, *supra*, are devoid of a factual basis to adequately explain the trade or business of the Wallace Division of Cessna and its relation to Coonrod."). *Woods* is not analogous because the record in this case is not "devoid of a factual basis." *Id*. There is evidence to support these statements—that the removal and replacement are an ordinary and/or integral part of Sunflower's regular operations. For instance, in another affidavit provided in Sunflower's response to plaintiff's motion to strike, Mr. Ricard clarified these paragraphs. According to Mr. Ricard, during a 1997 outage at Holcomb Station, Sunflower's own employees performed the same type of work that plaintiff attempted on January 19, 2012—in fact, it was the same air pre-heater unit. (Doc. 113-2 at 2.) In support, Mr. Ricard stated that he personally knew each of the employees that completed maintenance work on the air pre-heater in 1997, attaching a document he identified as the 1997 work order. (*Id*. at 2.) Accordingly, because Sunflower has established a factual basis to support the statements, the court declines to strike paragraphs nineteen and twenty of either affidavit.

Pursuant to Rule 59, plaintiff's motion to strike affidavits (Doc. 102) is granted with respect to paragraph seventeen in each affidavit, but is denied with respect to paragraphs nineteen and twenty in each affidavit.

**B. Sunflower's Motion for Summary Judgment — Statutory Employer**

Sunflower's main argument is that it, as landowner, is not liable for the negligence of P&E, the contractor. Sunflower cites *Herrell v. Nat'l Beef Packing Co., LLC*, 259 P.3d 663 (2011), for the proposition that the employee of a contractor, who is collecting workers compensation benefits, cannot pursue the landowner for violation of a non-delegable duty for the contractor's negligence. The court does not believe *Herrell* helps Sunflower's argument—factually or legally. Factually, the cases are dissimilar. In *Herrell*, the employee of the contractor fell into a hole on the floor of the beef packing facility. The hole was a defect in the premises that any invitee could encounter and was independent from the work the employee was contracted to perform. Here, plaintiff, the employee of the contractor, injured himself performing the work he was hired to do. The cold end basket could not fall on any invitee to the premises; rather, plaintiff and his co-workers had to abide by Sunflower's lock-out procedures, which restricts personnel in the area where work is being performed.

*Herrell* does not help Sunflower's legal argument, either. As the court explained:

> Under the plain language of these two statutes, a landowner in National Beef's position is not excluded from liability if its negligence causes injury to an independent contractor's employee while that employee is working on the landowner's property. It is not the employer, so it cannot claim the protection of K.S.A. 44–501(b)'s exclusive remedy provision. And it is not omitted from the ranks of third parties that "shall" be subject to suit under K.S.A. 44–504(a). The workers compensation statutory scheme simply does not respond to the general common law of premises liability. It certainly could do so if the legislature chose this policy route. Thus National Beef owed Herrell the same duty it owed to other entrants onto its property—a duty of reasonable care under the circumstances, including a duty to warn of any dangerous condition.

*Herrell*, 259 P.3d at 675. In this case, plaintiff's claim is direct negligence against Sunflower. Sunflower, therefore, is situated identically to National Beef. Thus, Sunflower owed plaintiff a duty of

reasonable care under the circumstances, including a duty to warn of any dangerous condition(s). For these reasons, Sunflower's argument is unpersuasive.

**C. Sunflower's and P&E's Motions for Summary Judgment — Statutory Employer**

Sunflower and P&E filed separate motions for summary judgment. (Docs. 97 & 99.) Both assert the same point: Plaintiff's claim is barred by the workers' compensation exclusive remedy found in Kan. Stat. Ann. § 44-501b(d) because Sunflower is plaintiff's statutory employer under Kan. Stat. Ann. § 44-503(a). Plaintiff counters this argument in two ways: (1) claiming Sunflower failed to properly preserve the statutory employer defense pursuant to Federal Rule Civil Procedure 8(c), and (2) arguing Sunflower is not his statutory employer.

Plaintiff's contention that Sunflower failed to properly plead or preserve its statutory employer defense under § 44-503(a) has already been partially addressed by Magistrate Judge James P. O'Hara. Sunflower and P&E each filed a motion to amend their respective answers, seeking leave to clarify their assertion of the statutory employer defense. (Docs. 124 & 125.) After fully briefing that issue, Magistrate Judge O'Hara granted both motions because plaintiff failed to show that he would be unduly prejudiced by the amendments, noting:

> Plaintiff admits that there has been discovery touching on the elements of the statutory employee defense since the beginning of this lawsuit. It was not until November 2014, when plaintiff filed its responses to the motions for summary judgment, that Sunflower and Piping first learned that plaintiff believed the parties' assertion of the exclusive remedy defense was insufficient. Before that, plaintiff had never filed pleadings seeking clarification and did not seek clarification in his discovery requests.

(Doc. 129 at 10 (citations omitted).) This court concurs with Magistrate Judge O'Hara.

Even if those amendments had not been allowed, the court concludes that Sunflower and P&E properly pleaded and preserved their statutory employer defense for consideration on the merits. Sunflower's original answer stated: "By way of further affirmative defense, the defendant states that the plaintiff's cause of action is barred under the exclusive remedy rule and the principle set fourth

[sic] in *Herrell v. National Beef Packing Company et al*, Supreme Court Case # 99,451."[4] (Doc. 8.) Sunflower asserted the statutory employer defense in its original answer by citing *Herrell*, which discussed the exclusive remedy rule and cited to *Zehring v. Wickham*, 658 P.2d 1004, 1007 (Kan. 1983), where the Kansas Supreme Court discussed the statutory employer provision.[5] For this additional reason, the court determines it may consider Sunflower's statutory employer defense. Next, the court considers whether Sunflower is plaintiff's statutory employer—if so, plaintiff's claim is barred under § 44-501b(d).

When the Kansas Workers' Compensation Act ("KWCA") applies, an employee receiving workers' compensation benefits cannot bring a tort action against the employer. Kan. Stat. Ann. § 44-501b(d); *see also Robinett v. Haskell Co.*, 12 P.3d 411, 414 (Kan. 2000) (holding "a worker may not maintain a common-law action for damages founded upon negligence against a party from whom he or she could have recovered compensation from that employer under the Act"). It is well settled that "the provisions of the [KWCA] are to be liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances." *Bright v. Cargill, Inc.*, 837 P.2d 348, 355 (Kan. 1992) (citing *Zehring*, 658 P.2d at 1004.) The KWCA also covers certain individuals or entities who are not the immediate employers of the injured workers, but who are statutory employers. Kan. Stat. Ann. § 44-503(a); *Lemmons v. Evcon Indus., Inc.*, No. 09-1232-JTM, 2011 WL 2790195, at *4 (D. Kan. July 14, 2011), *amended*, No. 09-1232-JTM, 2011 WL 6718740 (D. Kan. Dec. 21, 2011).

[4] The amended paragraph reads: "By way of further affirmative defense, the defendant states that the plaintiff's cause of action is barred under the exclusive remedy rule **because it is the plaintiff's statutory employer under the Kansas Workers Compensation Act** and the principle set fourth [sic] in Herrell v. National Beef Packing Company et al, Supreme Court Case # 99,451." (Doc. 130 (emphasis added).)

[5] *Zehring* also discusses *Woods*, 553 P.2d at 906—upon which plaintiff now relies. *See Zehring*, 658 P.2d at 1004.

In determining whether an employer is a statutory employer, courts apply the Kansas Supreme Court's test in *Hanna v. CRA, Inc.*, 409 P.2d 786 (1966). This test is a disjunctive (either/or) test, asking the following questions:

> (1) Is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business?
> (2) Is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

*Id*. at 789. While still referred to as the "*Hanna* tests," the Kansas Supreme Court has since clarified them. *Bright*, 837 P.2d at 356. In *Bright*, the court instructed that the first question now asks whether similar businesses use their own employees to perform the kind of work that was being performed by the injured worker—*not* whether the machine, equipment, etc. is necessary to the business. *Id.* at 359; *see also Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 785–86 (10th Cir. 2000). The second question asks whether the principal in the present case would normally do the work through its own employees. *Id*. While the two questions may overlap, a "yes" answer to either of those questions means the worker's sole remedy is under the KWCA. *Id.* at 356.

*1. Do Other Power Plants Use Their Own Employees to Perform This Type of Work?*

Sunflower and P&E offer no evidence that answers this question. With respect to argument, both Sunflower and P&E rely upon pre-*Bright* case law, which is no longer good law. *Id*. at 359 ("We disapprove of our prior decisions to the extent that they conflict with the analysis of the *Hanna* tests set out in this opinion."). However, in an effort to controvert a part of Dennis Ferris's deposition that relates to P&E's argument with respect to the **second** *Hanna* test, plaintiff inadvertently submitted evidence contrary to his position. Ferris has the following exchange:

> Q. Okay. You ever heard of a power plant doing this kind of work in-house?
> A. You mean them doing it themselves?
> Q. Yeah.
> A. **Yeah. There's power companies that do their own work.**

(Doc. 120-6 at 2 (emphasis added).) Ferris's testimony is never controverted by either party, which means there is uncontroverted, sworn testimony that provides a "yes" answer to the first *Hanna* test. Accordingly, the court finds that Sunflower is plaintiff's statutory employer because other power plants use their own employees to perform the changing of cold-end baskets.

*2. Ordinarily, Would Plaintiff's Work Be Conducted By Sunflower's Own Employees?*

As to this *Hanna* test, the parties actually presented evidence. Sunflower argues that its own employees ordinarily conduct the work done by plaintiff in this case. In support, Sunflower submits Mr. Ricard's affidavit, which states:

> 3. Exhibit D documents that employees of Sunflower performed the same task of removing cold end baskets from the air pre-heaters during the 1997 outage at the Holcomb Station. I personally know each one of the employees. This was the same job and in the same air pre-heater the plaintiff was working at the time of his injury in January of 2012. Not one of these employees was a certified boilermaker.
>
> 4. Sunflower Electric Power Corporation has not used its own employees to remove cold end baskets in the air pre-heaters since the 1997 outage due to time constraints during outages. Sunflower has hired contractors for this work on every outage since 1997. Since 1997 there have been outages in 2003, 2006, and the outage when plaintiff was injured in January of 2012.
>
> 5. There is no requirement in Sunflower's contract with P&E to use certified boiler makers to remove cold end baskets from the air pre-heaters. I have investigated and verified that there is no code requirement that only boiler makers perform this task. The decision to use certified boiler makers was P&E's in conjunction with the boiler maker's union.

(Doc. 113-2 at 2.) Plaintiff does not controvert that Sunflower's own employees performed the same work performed by plaintiff in 1997, and Sunflower does not dispute that it hired out contractors for this repair for each of the outages after 1997—2003, 2006, and 2012.

Plaintiff argues that Sunflower's own evidence demonstrates that its employees do not *ordinarily* conduct the work that plaintiff was completing in January 2012. However, the deposition of Sunflower-employee Josh Smith contradicts plaintiff's argument:

> Q. Okay. Is this your first outage that you've been involved with since you've been working at Sunflower?
> A. No. **Been on several.**
> Q. How often do outages happen?
> A. Every twelve to eighteen months, big ones.
> Q. Do these baskets and the air-preheater get replaced every outage?
> A. No.
> Q. What was the last time the baskets had been replaced on these particular pre-heaters?
> A. Uh, I think '06. It happens every five to six years . . .
> . . .
> Q. So this was your first, uh, time involved with a basket replacement while working at Sunflower, is that correct?
> A. **I've removed some myself.**
> . . .
> Q. You mentioned earlier that you actually helped remove some of the baskets. Can you tell me more about that?
> A. **I've removed baskets myself whenever Piping and Equipment isn't there.**
> . . .
> Q. [Y]ou had never actually removed a basket yourself?
> A. **Yes, I have removed baskets myself.**
> Q. When?
> A. **Um, I don't know. Prior to this. To inspect 'em to see when we needed to change 'em.**
> . . .
> Q. [H]ow'd that work?
> A. **Sometime before this outage that we changed baskets, we pull two or three down, look at 'em and either—I think we left 'em out.**

(*See* Docs. 120-1 and 117-7.) While the actual replacement of the cold-end baskets was contracted out to P&E, Smith's testimony indicates that, after 1997, Sunflower had employees performing the same work in order to assess whether the baskets needed replacements. It appears this procedure happened before Sunflower contracted with P&E to perform the maintenance underlying this suit. Smith's testimony also contradicts plaintiff's argument and evidence as to whether only a boilermaker can perform this type of work. The answer appears to be no, as Smith is not a boilermaker and has removed the baskets before. Smith's testimony supports Sunflower's argument that it contracted with P&E in order to minimize the duration of the outage.

The court finds this case very similar to *Bright*, as Sunflower's position is virtually identical to Cargill's position, which the court summarized:

> The supervisors were familiar with the work. The general description of the work was replacing a motor and reducer. Cargill did not have time to do the job with its employees. The work is the type of work which Cargill performs and has performed on other occasions. Cargill's work force had the capability of doing the work but Cargill did not do the work because it was short-handed and there were other duties its employees needed to do.

*Bright*, 837 P.2d at 360. Unlike Bright, plaintiff has not demonstrated a genuine issue of material fact because he has not sufficiently controverted the facts presented by Sunflower (and P&E). Accordingly, the court finds that Sunflower is plaintiff's statutory employer.

**IV. Conclusion**

For the above reasons, the court finds that the answer to either Hanna test is "yes." Thus, Sunflower is plaintiff's statutory employer under Kan. Stat. Ann. § 44-503(a). Because plaintiff is already receiving workers' compensation benefits from his direct employer, P&E, the court determines that Kan. Stat. Ann. § 44-501b(d) bars plaintiff's tort action against Sunflower.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Strike Affidavits (Doc. 102) is granted in part and denied in part, as set forth in this opinion.

**IT IS FURTHER ORDERED** that defendant Sunflower's motion for summary judgment (Doc. 97) is granted.

**IT IS FURTHER ORDERED** that third-party defendant P&E's motion for summary judgment (Docs. 99 & 101) are denied as moot.

The case is closed.

Dated this 8th day of May, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**